NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MOTOROLA MOBILITY LLC (formerly known as Motorola Mobility, Inc.),**
*Appellant,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

AND

**APPLE INC.,**
*Intervenor.*

---

2012-1666

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-745.

---

Decided: January 10, 2014

---

EDWARD J. DEFRANCO, Quinn Emanuel Urquhart & Sullivan, LLP, of New York, New York, argued for appellant. With him on the brief were ALEXANDER RUDIS and MATTHEW A. TRAUPMAN; CHARLES K. VERHOEVEN, of San

Francisco, California, and DAVID A. NELSON, of Chicago, Illinois.

MEGAN M. VALENTINE, Attorney-Advisor, Office of the General Counsel, United States International Trade Commission, of Washington, DC, argued for appellee. With her on the brief were PAUL R. BARDOS, Acting General Counsel, and WAYNE W. HERRINGTON, Assistant General Counsel. Of counsel was ANDREA C. CASSON, Assistant General Counsel for Litigation.

MARK S. DAVIES, Orrick, Herrington & Sutcliffe LLP, of Washington, DC, argued for intervenor. With him on the brief were T. VANN PEARCE and DANIEL HABIB of Washington, DC; and E. JOSHUA ROSENKRANZ, of New York, New York. Of counsel on the brief were MARK G. DAVIS and BRIAN E. FERGUSON, Weil, Gotshal & Manges LLP, of Washington, DC; and MATTHEW D. POWERS, Tensegrity Law Group LLP, of Redwood Shores, California. Of counsel were BRIAN BUROKER, Gibson, Dunn & Crutcher, of Washington, DC; JOSH KREVITT, of New York, New York; and HERVEY MARK LYON, of Palo Alto, California; ANNE MARIE CAPPELLA, Weil, Gotshal, & Manges, LLP, of Redwood Shores, California; and KATHERINE M. KOPP, Orrick, Herrington & Sutcliffe, LLP, of Washington, DC.

———————————

Before PROST, BRYSON, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Motorola Mobility LLC ("Motorola") appeals the International Trade Commission's determination that Apple Inc. ("Apple") did not violate § 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337. The Commission found that the accused mobile devices imported and sold by Apple did not infringe claim 12 of Motorola's U.S. Patent No. 6,272,333 ("'333 patent") and that Motorola

failed to establish the technical prong of the domestic industry requirement. Because these conclusions of the Commission were supported by substantial evidence, we *affirm*.

## I.

Motorola's '333 patent describes "a method and apparatus in a wireless communication system for controlling a delivery of data from a fixed portion of the wireless communication system to a subscriber unit." '333 patent col. 1 ll. 8-10. In general, the invention insures that subscriber units are sent information over the wireless network that the subscriber unit can utilize. *Id.* col. 1 ll. 20-29. This is particularly important because subscriber units have become increasingly customizable and it would be inefficient to occupy network resources attempting to send information to a subscriber unit that was not configured to accept or properly utilize the information.

One "aspect of the present invention" is to control the flow of information to subscriber units by maintaining a registry of the applications accessible to the subscriber unit and communicating information regarding the accessibility of those applications to the fixed portion of the wireless communications network. As such, the '333 patent discloses a subscriber unit that contains a "processing system . . . programmed to maintain an application registry for registering applications accessible to the subscriber unit." *Id.* col. 2 ll. 18-20. In response to a change in the accessibility of an application, the subscriber unit will "update the application registry and control the transmitter [of the subscriber unit] to communicate the change to the fixed portion of the wireless communication system." *Id.* col. 2 ll. 20-24. This process is described in Figure 4 of the '333 patent:



FIG. 4

At step 404, the subscriber unit "registers the applications accessible to the subscriber unit . . . into the application registry 226." *Id.* col. 5 ll. 26-30. At step 406, "[t]he processing system 206 then monitors the status of the subscriber unit 122 to determine 406 whether a change in the accessibility of an application has occurred, e.g., through the installation of a new application, or through coupling the subscriber unit 122 to a previously uncoupled external device 230, or through uncoupling the subscriber unit 122 from a previously coupled external device 230." *Id.* col. 5 ll. 30-37.

If a change in the accessibility of an application has occurred at step 408, then the subscriber unit updates the application registry (step 410), and communicates the change to the fixed portion of the network (step 412). *Id.* col. 5 ll. 37-48. The received information allows the fixed portion of the network to control the delivery of data to the subscriber unit in accordance with the goals of the invention. *Id.* col. 2 ll. 10-13.

The present appeal involves only claim 12 from the '333 patent. That claim recites:

> 12. A subscriber unit in a wireless communication system for controlling a delivery of data from a fixed portion of the wireless communication system, the subscriber unit comprising:
>
> a receiver for receiving the data;

> a processing system coupled to the receiver for processing the data; and
>
> a transmitter coupled to the processing system for communicating with the fixed portion of the wireless communication system,
>
> wherein the processing system is programmed to:
>
>> maintain an application registry comprising a list of all software applications that are currently accessible to the subscriber unit; and
>>
>> in response to a change in accessibility of an application,
>>
>>> update the application registry; and
>>>
>>> control the transmitter to communicate the change to the fixed portion of the wireless communication system.

The Administrative Law Judge (ALJ) issued an initial determination (ID) that provided five grounds for rejecting Motorola's position, including four related to non-infringement and one related to domestic industry. The Commission affirmed the ALJ's ID finding of no violation of section 337, but did so based on "modified reasoning." The Commission's modified reasoning relied on two grounds for finding non-infringement of claim 12 and also concluded that Motorola had not satisfied its burden of demonstrating that its Droid 2 product satisfied the technical prong of the domestic industry requirement.

Motorola appeals the non-infringement and technical-prong findings by the Commission. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(6).

## II.

The parties' infringement dispute involves the construction of the claim limitations that require the "subscriber unit" be "programmed to . . . , in response to a change in accessibility of an application, update the application registry; and control the transmitter to communicate the change to the fixed portion of the wireless communication system." Although various aspects of this claim element were construed by the Commission, the dispositive claim construction issue concerns the correlation between "a change in accessibility" and what must be programmed to occur in response to "a change in accessibility."

Apple argues that the claim requires *every* change in accessibility to trigger an update to the registry and a communication to the fixed portion of the network. Motorola, on the other hand, argues that Apple's products infringe because they are programmed (1) "in response to a change in accessibility of an application," (2) to communicate "the change" in accessibility of an application to the "fixed portion of the wireless communication system." According to Motorola, claim 12 does not require communication of every change in accessibility of an application, as long as the mobile device communicates in response to some changes in accessibility.

On appeal, Motorola argues that the accused devices meet the disputed claim limitation when a push-enabled application is deleted from the mobile device. According to Motorola, a deletion causes an update to the application registry in the accused devices and a communication to the fixed portion of the network cancelling push notifications for the deleted application. Put simply, the change in accessibility of deletion is not the change in accessibility that is communicated to the fixed portion of the network. Rather, what is communicated to the fixed portion of the network is a message indicating that push

notifications for the application should be cancelled. This message only indicates that push notifications have been cancelled for the application; it does not inform the fixed portion of the network that the application has been deleted.

Motorola's infringement theory necessarily relies on two changes in accessibility that occur on the accused devices—one change associated with deletion of a push-enabled application and a different change in accessibility regarding cancellation of push notifications. This theory is not consistent with the claim's limitations. The Commission's finding that the accused devices do not infringe claim 12 of Motorola's '333 patent is therefore supported by substantial evidence.

To the extent that Motorola suggests that the claim covers devices in which one change in accessibility (e.g., deletion of an application) causes an update to the registry and another change in accessibility (e.g., disabling push notification) is communicated to the fixed portion of the wireless system, that argument is not supported by the claim, which requires that the registry be updated in response to "a" change in accessibility and that the transmitter communicate "the" change in accessibility, i.e., the change that resulted in updating the registry. Motorola's argument fails because Motorola has not identified a single change in accessibility in the accused Apple devices that causes both an update to the application registry and a communication of the change in accessibility to the fixed portion of the wireless network as required by the asserted claim.

Motorola relies on the proposition that the word "a" in patent claims generally means "one or more." As a general rule, the indefinite article "a," when used in conjunction with the open transitional word "comprising," carries the meaning of "one or more." *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008).

But this general rule does not apply when the context of the use of "a" within the claim clearly demonstrates that it is limited to the singular. *Id. See also Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1359 (Fed. Cir. 2005).

Here, the claim uses the open transition "comprising" and further recites "a change in accessibility." However, the remaining context of the claim indicates that the recited "a change in accessibility" does not reach subscriber units where one change in accessibility triggers an update to the application registry and a second change in accessibility triggers a communication of the change to the fixed portion of the wireless network. First, the claim uses the term "and" and not "or" to describe what must occur in response to "a change in accessibility," thereby indicating a conjunctive requirement within the claim. *See TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376 (Fed. Cir. 2008) (construing claim as requiring two connections with a single component because the claim used the conjunction "and" when reciting the two distinct connections to that single component). This conclusion is further consistent with the teachings in the specification, including the method described in figure 4 where a single change in accessibility causes both an update to the application registry and a communication of the change to the fixed portion of the network.

Second, the claim requires that "the change" be communicated to the fixed portion of the wireless network. Since the only antecedent basis for this change derives from the phrase "a change in accessibility," the change that causes an update to the application registry must be the same change that is communicated to the fixed portion of the wireless network. Accordingly, the disputed claim limitation requires at least one change in accessibility that alone causes both an update to the application registry and a communication of that specific change in accessibility to the fixed portion of the wireless network.

The parties do not materially dispute the relevant operation of the accused functions of Apple's mobile devices. In short, these functions include two distinct changes in accessibility: (1) the change in accessibility associated with the installation or deletion of an application and (2) the change in accessibility associated with authorizing or cancelling push notifications.[1] These different changes in accessibility trigger different responses on the accused devices. When an application is installed or deleted on the accused devices, the application is added to or removed from the list of applications currently installed on the device, but there is no communication to the fixed portion of the wireless network regarding the act of installation or deletion. When a user authorizes push notifications for an application that has already been installed, the accused devices send a communication to the fixed portion of the network communicating the authorization to receive push notifications, but this change in accessibility does not cause an update to the list of applications on the devices.[2] If a user thereafter cancels authorization of push notifications, the accused devices send a communication to the fixed portion of the network communicating

---

[1]    During oral argument, Motorola's counsel stated that authorizing or cancelling push notifications was a change in accessibility:

> Q: Are you arguing that registering or unregistering for push notifications is a change in accessibility as used within the claims?
>
> A: Yes, your honor.

Appeal Hr'g at 12:26-36, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 12-1666.mp3.

[2]    To receive push notifications, a push-enabled application must first be installed on the device and the user must thereafter authorize the application to receive push notifications.

the cancellation but there is no update to the list of applications.

## III.

The Commission also found that Motorola failed to satisfy its burden for establishing the technical prong of the domestic industry requirement. The test for the technical prong is essentially the same as that for infringement, i.e., a comparison of the alleged domestic product against the asserted claims. *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1375 (Fed. Cir. 2003). Motorola relied on its Droid 2 product and argued that it practices all elements of claim 12. The Commission disagreed, concluding that Motorola had not presented sufficient evidence to demonstrate a causal connection between a change in accessibility of an application on the Droid 2 and a communication of the change in accessibility without any further intervening action by the user.

The installation and deletion of applications and the registering and unregistering for push notifications on Motorola's Droid 2 have the same relevant features as the corresponding operations on the accused Apple devices.[3] As with infringement, Motorola's arguments in satisfaction of the technical prong rely on two distinct changes in accessibility to satisfy the limitations of claim 12. But, this is inconsistent with the claim's requirements that

---

[3]   During the hearing, Motorola's counsel conceded: The domestic industry issue rises and falls with infringement. So, there is parity between the accused products and how they operate from the perspective of the claims and the domestic industry product, the Droid 2. Appeal Hr'g at 12:50-13:03, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2012-1666.mp3.

there be at least one change that alone triggers both an update to the application registry and for that specific change to be communicated to the fixed portion of the network. As such, there was substantial evidence to support the Commission's finding that Motorola failed to satisfy the technical prong of the domestic industry requirement.

## IV.

We have considered the parties' other arguments, but they do not affect the outcome of our decision. We therefore affirm the Commission's determination that Apple did not violate § 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, in connection with Motorola's '333 patent.

**AFFIRMED**

Costs

Each side shall bear its own costs.