NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**BOSE CORPORATION,**
*Plaintiff-Appellant,*

**v.**

**SDI TECHNOLOGIES, INC.,**
*Defendant-Appellee,*

AND

**IMATION CORPORATION, MEMOREX PRODUCTS, INC., AND D.P.I., INC.,**
*Defendants-Appellees,*

AND

**3XM CONSULTING, LLC,**
*Defendant.*

_____

2013-1347

_____

Appeal from the United States District Court for the District of Massachusetts in No. 09-CV-11439, Judge William G. Young.

_____

Decided: March 14, 2014

_____

MARK J. HEBERT, Fish & Richardson, P.C., of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief was JOLYNN M. LUSSIER.

MATTHEW B. LOWRIE, Foley & Lardner LLP, of Boston, Massachusetts, argued for all defendants-appellees. With him on the brief for SDI Technologies, Inc. was AARON W. MOORE. On the brief for Imation Corporation, et al., were MICHAEL LEE NEPPLE and DAVID B. JINKINS, Thompson Coburn, LLP, of St. Louis, Missouri.

---

Before CHEN, CLEVENGER, and HUGHES, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

This is a patent infringement case. Appellant Bose Corporation ("Bose") asserted U.S. Patent No. 7,277,765 (the "'765 Patent") against Appellees SDI Technologies ("SDI"), Inc., Imation Corporation, Memorex Products, Inc., and DPI, Inc. (collectively "Appellees") in the United States District Court for the District of Massachusetts, accusing 144 speaker systems on theories of induced and contributory infringement. Summary judgment of noninfringement was granted for all 144 speakers, and Bose now appeals. *Bose Corp. v. SDI Tech., Inc.*, No. 1:09-cv-11439 (D. Mass. July 10, 2012) [hereinafter *Summ. J. Op.*].

As to all but one of the accused speakers (collectively "the Common Products"), the question of noninfringement was resolved on the constructions of "interface," "interface unit," "interface device," and "interface module." Because the District Court correctly construed the terms, we *affirm* its summary judgment of noninfringement.

As to the last accused speaker, SDI's iW1, the District Court in granting summary judgment of noninfringement improperly drew inferences about SDI's lack of intent to

infringe. We *reverse* its summary judgment of noninfringement for the iW1 and *remand* for further proceedings.

## BACKGROUND

To play a digital sound file on a speaker, the file must first be converted into analog signals usable by the speaker. This infringement suit concerns 144 accused speakers which play digital files stored on "docked" iPods, iPhones, or iPads (collectively "iDevices") made by Apple Inc.

All iDevices have internal circuitry that converts the digital files stored within into analog signals. The Common Products, constituting 143 of the 144 accused speakers, connect to the iDevices through pin connectors and make use of these analog signals generated by the iDevices. The remaining accused speaker, SDI's iW1, connects to the iDevices wirelessly. It receives the signals in digital file form and performs the conversion to analog itself.

Bose charges the Appellees with indirect infringement of the asserted patent for the manufacture, use, offer for sale, sale, and importation of the accused speakers.

All asserted claims include the term "interface." One group, including claim 1, recites that the "interface" must be built into an enclosure along with a "powered speaker" (collectively "the common enclosure claims"). Another group, including claims 35 and 37, has no such restriction. Instead, these claims recite "an interface unit operably coupled to the sound reproduction device," "an interface device operably coupled to the sound reproduction device," or "an interface module at least partially integrated within the enclosure."

In claim construction, Bose urged that "interface" meant no more than a connection, and argued that the connection between the iDevices and the accused speakers, pin connection or wireless, satisfied the claim term. The District Court instead adopted Appellees' construc-

tion of "interface" to mean "circuitry that converts a digital audio signal from an audio source to an analog audio signal and transmits digital control commands." *Bose Corp. v. SDI Tech., Inc.*, 828 F. Supp. 2d 415, 418 (D. Mass. 2011) [hereinafter *Markman Mem.*]. As for "interface unit," "interface device," and "interface module," the District Court adopted the construction agreed to by the parties prior to the *Markman* hearing that all three terms be construed as "a structure that includes an interface." *Id.* at 421.

In light of the District Court's construction of "interface," Bose's common enclosure infringement theories against all speakers but the iW1 collapsed because the Common Products lack circuitry to convert digital files to analog signals. *Id* at 20.

Bose also relied on the claims reciting "an interface device" or "an interface module" against the Common Products. *Id* at 18. It urged that "the claimed 'interface device' or 'interface module' is present in the combination of any one of the accused systems together with an iDevice," making use of the digital to analog conversion circuitry within the iDevices to match the construction of "interface." *Id.*

When Appellees moved for summary judgment of non-infringement, the District Court clarified that "a structure," within the constructions of "interface unit," "interface device," and "interface module" as "a structure that includes an interface," must be understood to be "discrete" or "singularly physical, not defined on paper as different pieces of separate devices." *Id.* at 8-10. This understanding of "a structure" precludes an "interface device" or "interface module" split across an accused speaker and an iDevice. Bose's remaining case against the Common Products collapsed.

The case against SDI's iW1 does not suffer from such infirmities, because the speaker does have built-in digital

to analog conversion capabilities. *Id.* at 21. The District Court therefore acknowledged that it "may not grant summary judgment based on its construction alone." *Id.*

Nonetheless, the District Court concluded that, "as to the [iW1], no reasonable jury could find SDI had the intent necessary to support a finding of inducement or contributory infringement." *Id.* at 30. It looked to the fact that "SDI had an invalidity opinion, and a Bose expert agreed that SDI believed the invalidity opinion." *Id.* at 29. Consequently, it granted summary judgment of noninfringement for SDI's iW1. *Id.* at 29-30.

Bose timely appeals, assigning the following errors to the District Court's claim constructions and findings of no intent to indirectly infringe:

1) improper inclusion of digital to analog conversion within the meaning of "interface;"

2) improper construction of "a structure," within the meaning of "interface unit," "interface device," and "interface module," to be "discrete" or "singularly physical;" and

3) improper weighing of evidence to conclude that no reasonable jury could have found intent to indirectly infringe concerning SDI's iW1.

Appellees support the District Court's conclusions. They further urge, as an alternative basis, that the summary judgment of noninfringement for all Common Products be affirmed on the grounds that all Appellees lack the requisite intent for indirect infringement.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

CLAIM CONSTRUCTION

Standard of Review

We review the claim constructions of the District Court according to the following standard:

Claim construction is an issue of law that we review *de novo*. In construing a claim term, we look at the term's plain meaning. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." In order for the doctrine of prosecution disclaimer to apply, a statement in prosecution must constitute a clear and unmistakable disclaimer of claim scope.

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363, 1373 (Fed. Cir. 2013) (citation omitted).

"Interface"

The specification describes two embodiments, referred to by the figure in which it is depicted:



FIG. 1



FIGURE 2

FIG. 2

The relevant parts are named within the specification:

| LABEL | PART | LABEL | PART |
|---|---|---|---|
| 22 | Connecting Bus | 50 | Audio System Control Connector |
| 33 | Sound Card | 51 | Digital Terminal |
| 48 | Stereo Jack | 52 | Bus Interface Connector |
| 49 | Analog Terminal | 54 | Interface Unit |

The signal within the computer on Bus 22 is digital. To operate with Analog Terminal 49, some digital to analog signal conversion must occur. In Figure 1, the conversion is performed by Sound Card 33, within the

computer.[1] In Figure 2, the conversion is performed by Interface Unit 54, outside of the computer.

The parties proposed the following constructions for "interface" in the District Court:

| BOSE | APPELLEES |
|------|-----------|
| A connection. | Circuitry that converts a digital audio signal from an audio source to an analog audio signal and transmits digital control commands. |

The District Court adopted Appellees' construction. *Markman Mem.* at 418. It reasoned, because both Figure 1 and Figure 2 referred to some "connection" and because "interface" is only mentioned with relation to Figure 2, that the "interface" is a different part from the "connection." *Id.* at 419. The District Court also determined that the "'interface' connects to the computer *through* a separate 'connector'" in Figure 2, where Interface Unit 54 is linked to the computer through Bus Interface Connector 52. *Id.* (emphasis original).

The District Court then analyzed Figure 3, which depicts Interface Unit 54 with D/A converter 60, to conclude that the claimed "interface" must have digital to analog signal conversion circuitry.

In arriving at its conclusions, the District Court also looked to the prosecution history. In the patent application, original claim 1 recites

a connector for connecting said sound reproduction device with a computer

---

[1]    The iDevices in this case have all the characteristics of a computer.

Original claim 2, dependent on original claim 1, specifies an additional "interface device,"

> an interface device for connecting said computer and said connector,

> said interface device comprising a digital to analog converter.

The District Court noted that the "interface" limitation of original claim 2 was incorporated by amendment into the patent claims as issued, and found from the change in the claim language a suggestion that the "'interface' is not simply 'a connection' as Bose now proposes." *Id.* at 420. The District Court acknowledged that, under its construction, the Figure 1 embodiment would be excluded from the scope of the claims. However, it reasoned that the embodiment was surrendered by the above claim amendment during prosecution. *Id.*

On appeal, Bose has slightly modified its construction:

| BOSE | APPELLEES |
|---|---|
| Circuitry that receives an audio signal from an audio source and transmits digital control commands, or, in the alternative, a connection. | Circuitry that converts a digital audio signal from an audio source to an analog audio signal and transmits digital control commands. |

Bose's principal construction, in its own words, "is essentially the district court's construction minus the D/A converter."

To resolve this question of claim construction, we begin by "look[ing] at the term's plain meaning." *Teva Pharms.*, 723 F.3d at 1373.

Claim 1 recites "an interface configured to operably couple the audio source device with the powered speaker."

It is clear that the "audio source device" and the "powered speaker" are two different physical bodies between which some connection is necessary. The scope of any claim construction of "interface" must therefore at least encompass the construction proposed in the District Court by Bose, "a connection." The question on this appeal is whether the disjunction between the "audio source device" and the "powered speaker" extend beyond the physical to the *type* of the signal usable by the two, requiring some translation in the middle.

The distinction between "interface" and "connection" is made clear by the specification's reference to the "connectors" on the "interface" that enables other parts to be connected to the "interface" itself. *See*, *e.g.*, '765 Patent 4:3 ("Stereo jack 48 and the audio system control connector 50 of FIG. 1 are replaced by a bus interface connector 52, which connects to an interface unit 54."); 4:63-66 ("interface unit 54 is implemented as a circuit board that connects internally to bus 22 (so that interface connector 52 is internal to the computer, and is physically connected to an expansion slot in the computer)"), original claim 2 ("an interface device for connecting said computer and said connector"). The "interface" therefore cannot merely be a "connection" that bridges a physical disjunction.

To that end, the intrinsic evidence supports the District Court's construction of "interface" to include data conversion, specifically, a change from the digital signal from the "audio source device" to an analog signal for the "powered speaker." As the District Court noted, "unasserted or cancelled claims may provide 'probative evidence' that an embodiment is not within the scope of an asserted claim." *PSN Ill., LLC v. Ivoclar Vivadent, Inc.,* 525 F.3d 1159, 1166 (Fed. Cir. 2008). It properly consulted the language of the original claims and the change of language of "connector" in original claim 1 to "interface" in issued claim 1. Original claim 1 would have covered both the Figure 1 and Figure 2 embodiments. It is original

claim 2, dependent on claim 1, setting forth "an interface device for connecting said computer and said connector, said interface device comprising a digital to analog converter," that specifically reads on the Figure 2 embodiment. Original claim 2 therefore provides support for understanding "interface" to mean more than just a "connection" and to include a data conversion as well.

A reading of the specification further shows that, as used within the asserted patent, "connection" refers to physical linkages while "interface" is reserved for linkages that perform data conversion. As properly pointed out in the Appellees' brief, "interface" is used in the specification only with reference to the "embodiment in which a computer is outputting a *digital* signal to a speaker requiring an analog signal." (emphasis original). *See also Markman Mem.* at 419 ("'interface' only appears in the second embodiment").

As the specification states,

> [t]he invention relates to interactive sound reproducing and more particularly to sound reproducing from computer compact disk (CD) drives, network radio stations, broadcast radio stations, and digitally encoded computer files.

'765 Patent 1:15-19. Within this technological context, we are unable to identify what other possible role the "interface" could play in "operably coupl[ing] the audio source device with the powered speaker" as set forth in claim 1 if not that of digital to analog signal conversion.

Consequently, we affirm the District Court's conclusion that "interface" is "circuitry that converts a digital audio signal from an audio source to an analog audio signal and transmits digital control commands."

### "Interface Unit," "Interface Device," and "Interface Module"

As Bose concedes, the parties agreed prior to the *Markman* hearing that "interface unit," "interface device," and "interface module" all be construed as "a structure that includes an interface." Bose now argues that the District Court has improperly understood "a structure" to be "discrete" or "singularly physical, not defined on paper as different pieces of separate devices."

The District Court arrived at its conclusion that all three terms refer to "discrete" structures based on the disclosures of the specification. It pointed out that "each of these three arrangements [of 'interface unit' in the specification] appears to treat the interface unit as a discrete device." *Summ. J. Op.* at 8. It also referred to Figure 3, which it identifies "as practicing the interface unit, module, or device in the '765 Patent," *id.* at 9, as showing that the three terms all refer to "discrete" devices.



FIG. 3

Bose is correct to cite to our precedents that, in general, "a structure" need not be unitary. *See, e.g., Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1309 (Fed. Cir. 2005) ("mere depiction of a

structural claim feature as unitary in an embodiment, without more, does not mandate that the structural limitation be unitary").

Nonetheless, the District Court rightly concluded that the "interface unit," "interface device," and "interface module" must have some form of independent existence, or, in its words, be "singularly physical, not defined on paper as different pieces of separate devices." *Summ. J. Op.* at 10.

As discussed above, the District Court looked to the disclosures of the specification and of Figure 3 for its conclusions. But beyond that support—which the District Court properly relied upon—the structure of the claims further distinguish the "interface unit," "interface device," and "interface module" from the "music storage device" or "audio source device," which in this suit refer to the iDevices. Claim 25, which concerns the "interface unit," recites that "a music storage device [is] configured to removably connect with the sound reproduction device via the interface unit." Claim 35 similarly states, with regard to "an interface device," that "an audio source device [is] configured to removably connect to the sound reproduction via the interface device." Claim 37, pertaining to the "interface module," requires that "an audio source device [is] configured to operably connect to the sound reproduction device via the interface module." *See also* '765 Patent claim 38 ("the interface module is configured to provide a physical interface between the sound reproduction system and the audio source device").

The claims consistently make clear that the "interface unit," "interface device," and "interface module" reside interstitially between the "sound reproduction device" and the "music storage device" or "audio source device." No room exists for a reading where any component of the alleged "music storage device" or "audio source device" may be identified as a part of or the entirety of the

claimed "interface unit," "interface device," or "interface module." The District Court properly concluded that the three terms refer to structures that are "singularly physical, not defined on paper as different pieces of separate devices." *Summ. J. Op.* at 10.

### INFRINGEMENT

When the Common Products are put in operation with the iDevices, the digital to analog signal conversion takes place within the iDevices. There is undeniably no structure that is "singularly physical, not defined on paper as different pieces of separate devices," which includes "circuitry that converts a digital audio signal from an audio source to an analog audio signal." Since there is no "interface unit," "interface device," and "interface module" in the combination of the Common Products and the iDevices, we affirm the District Court's summary judgment of noninfringement for these speakers.

In contrast, the appeal over the District Court's constructions does not affect the question of infringement of SDI's iW1. A digital to analog signal conversion within the speaker could be inferred, and the summary judgment of noninfringement for the iW1 rests not on claim construction but on SDI's mental state with regard to indirect infringement. *Summ. J. Op.* at 21.

### MENTAL STATE OF INDIRECT INFRINGEMENT

#### Standard of Review

We have held that

[s]ummary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "This court reviews the district court's grant or denial of summary judgment under the law of the regional circuit."

*Teva Pharms.*, 723 F.3d at 1381 (Fed. Cir. 2013) (citation omitted).

According to the law of the regional circuit, the First Circuit,

> [o]ur review of the district court's grant of summary judgment is de novo, "drawing all reasonable inferences in favor of the non-moving party while ignoring 'conclusory allegations, improbable inferences, and unsupported speculation.'" We may affirm on any basis apparent in the record.

*Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013) (citation omitted).

## Analysis

SDI moved for summary judgment of noninfringement for lack of requisite intent for indirect infringement because, after learning of the existence of the asserted patent, it obtained and allegedly relied upon an opinion of counsel stating that the patent is invalid. SDI relied on precedent that good-faith belief of noninfringement can be established by reliance on advice of counsel obtained after learning of the asserted patent and that an invalid patent cannot be infringed. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Commil USA, LLC v. Cisco Sys, Inc.*, 720 F.3d 1361, 1369 (Fed. Cir. 2013) ("evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced infringement.").

The District Court agreed with SDI that no reasonable juror could conclude that SDI had the requisite intent to infringe. The District Court relied on the following facts asserted by SDI in response to a Bose interrogatory, which were confirmed by Bose's subsequent factual admissions:

1) SDI obtained a written letter of counsel opining that the asserted patent was invalid in view of U.S. Patent No. 6,026,150 ("the Frank Patent") and No. 6,563,769 ("the Van Der Muelen Patent"), *id.* at 27;

2) the Frank and the Van Der Muelen Patents were subsequently combined to reject all claims of the asserted patent in reexamination, *id.* at 28; and

3) Bose's expert agreed that SDI believed its invalidity opinion, *id.* at 28-29.

On appeal, Bose argues that the interrogatory response had not been verified, and therefore cannot be considered by the District Court in deciding the summary judgment motion. Bose relies on *Garside v. Osco Drug, Inc.*, a First Circuit precedent,[2] for the proposition that evidence must be admissible at trial to be considered on summary judgment. 895 F.2d 46, 49-51 (1st Cir. 1990).

Bose overlooks that the interrogatory answers provided by SDI were based on the corporation's "present knowledge, information, and belief," A4522, which were drawn from that of SDI's representatives, A4524. Under the law of the First Circuit, SDI's interrogatory answers suffice for consideration on summary judgment. *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 151 n.10 (1st Cir. 2009) (letter as described in interrogatory response is a part of the summary judgment record even if the letter itself has not been properly authenticated and is not part of summary judgment record); *Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 110 (1st Cir. 2006) (interrogatory answers based on personal

---

[2] The admissibility of evidence is governed by the law of the regional circuit. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013).

knowledge suffice for summary judgment). Furthermore, even were the interrogatory answers deficient for lack of verification, their contents were confirmed by Bose's own admissions. A4756. We therefore reject Bose's argument that the District Court was barred from considering SDI's interrogatory answers.

In the grant of summary judgment, the District Court *entirely* absolved SDI of indirect infringement liability based on the opinion of counsel. Bose points out that SDI did not obtain the opinion until several months after it was aware of the asserted patent and that the District Court's grant of summary judgment insulated SDI from potential post-verdict liability. Bose therefore challenges whether the complete absolution granted by the summary judgment is appropriate.

Several points in time deserve independent analysis to judge SDI's good-faith belief of invalidity.

Bose did not allege or introduce evidence that SDI learned of the existence of the asserted patent until December 10, 2008. From this record, SDI could not be found to have the state of mind necessary to commit indirect infringement prior to that date. It is therefore proper to free SDI of liability for the time before it became aware of the patent.

The record is however silent as to what may have transpired after December 10, 2008 and up to March 26, 2009, when representatives of SDI and Bose had a meeting. For this time interval, the record reveals only that SDI knew of the asserted patent but nothing about SDI's state of mind in reaction to that knowledge. SDI may or may not have had reliable information causing it to believe the patent is invalid, or may have had other bases to demonstrate good-faith, and may or may not have relied on that information.

At the March 26, 2009 meeting, SDI brought the Frank Patent to Bose's attention and argued that the asserted patent is invalid in view of the Frank Patent in combination with other prior art. The record neither shows that SDI based its position on any opinion of counsel nor names the art in addition to the Frank Patent necessary to invalidate the asserted patent. It may be that the SDI representatives had been briefed by counsel and that the interrogatory answers fail to express all the details revealed at the March 26 meeting, but that evidence is not before us. It is only after the meeting that SDI commissioned an opinion of counsel.

Where the record reveals no basis for a good-faith belief sufficient to thwart liability, summary judgment of no liability cannot stand. Whether SDI had such a good-faith belief prior to receiving the opinion of counsel is a triable issue for the jury to consider. Therefore the summary judgment incorrectly absolves SDI of liability from December 10, 2008 until May 22, 2009, when SDI received the opinion of counsel.

Bose further argues that the District Court improperly allowed the opinion of counsel to absolve SDI of potential post-verdict liability. The District Court found that the patent's validity and the iW1 device's infringement were both triable issues for the jury. A jury could, at trial, find the patent not invalid and infringed. In this scenario, SDI's opinion of counsel would not shield it from post-verdict liability because SDI could not credibly argue that it maintained its good-faith belief of invalidity following a verdict to the contrary. The summary judgment improperly absolved SDI of potential post-verdict liability.

Bose urges that the opinion of counsel is also insufficient to support the summary judgment for the time period between its receipt and a potential trial. In support, Bose argues that the letter was not introduced in evidence, and therefore the contents neither are known in

detail nor can be compared with the rationale used to invalidate the patent on reexamination. Bose also maintains that the evidence, construed in the light most favorable to it as the nonmovant, would allow a reasonable jury to conclude that SDI never relied on the opinion.

Significantly, however, Bose does not challenge the opinion of counsel as legally incompetent; its challenge is to the absence of evidence about the opinion. Bose however is responsible for the situation. As we learned in oral argument, Bose had possession of SDI's opinion. Bose was thus armed with the very document that it could challenge as incompetent or insufficiently detailed to permit comparison with the reexamination. Bose chose not to introduce the opinion, and thus was left with no rebuttal to SDI's interrogatory response that its counsel advised invalidity on the same prior art later relied upon by the Patent Office to reject the claims. Because the District Court was free to rely on the interrogatory responses to grant summary judgment, we reject Bose's challenge to the opinion of counsel.

There remains, however, the question of whether SDI is entitled to summary judgment on the grounds that it relied on the opinion of counsel. A party seeking to show lack of the requisite intent to infringe, based on receipt of a competent counsel opinion of noninfringement or of invalidity, must also show that it "had exercised reasonable and good-faith adherence to the analysis and advice therein." *Central Soya Co., Inc. v. George A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983). In other words, such a party must prove good-faith reliance on the opinion of counsel. Upon receipt of an opinion, it is possible that a party may choose to ignore the opinion, or disagree with it, or be indifferent to it, among a wide range of reactions to having the opinion in hand. Without proof of good-faith reliance, possession of the opinion alone is hardly dispositive of the state of mind necessary to avoid liability.

Thus, although SDI is credited with the receipt of an invalidity opinion of counsel the competence of which is not challenged, unquestionable proof of good-faith reliance is necessary to support a summary judgment of no indirect infringement. SDI alleged as a statement of undisputed facts that "SDI relied on [the] professional opinion that the combination of the Frank patent and the Van Der Muelen patent rendered the claims invalid, believing that there are no valid claims for SDI to infringe." A4756. Bose disputed this specific allegation. A4756. The District Court noted that Bose disputed SDI's reliance on the opinion, but excused the lack of reliance because "it is undisputed that the Frank Patent was subsequently combined with the Van Der Muelen patent in a reexamination of the '765 patent to reject all of the claims of the patent." *Summ. J. Op.* at 27-28.

Whether the Patent Office subsequently rejected the claims on the same grounds identified in the opinion of counsel (as it so happened) does not prove that SDI relied on the action of the Patent Office to show its good-faith. SDI alleges as a fact that the Patent Office's rejection of the claims "validated" its reliance on the opinion, but that allegation, like the base allegation of good-faith reliance, is disputed by Bose. A4757. Furthermore, even if the case presented an uncontested fact of good-faith reliance on the opinion of counsel, summary judgment could not lie without uncontested proof of the date upon which such good-faith reliance began.

A material dispute thus remains on the issue of whether SDI relied in good-faith on its opinion of counsel. As noted above, summary judgment in favor of SDI on the rationale of the District Court cannot lie for any time before SDI received its opinion, nor can it lie thereafter because SDI's good-faith reliance on the opinion remains to be tested.

Because we affirm the summary judgment of noninfingement for the Common Products on claim construction grounds, we do not consider Appellants' arguments that they lacked the requisite intent to indirectly infringe.

## CONCLUSION

The District Court's constructions of "interface," "interface unit," "interface device," and "interface module" are properly supported, and we affirm its summary judgment of noninfringement for the Common Products. In granting summary judgment of noninfringement for SDI's iW1, the District Court improperly depended on incomplete evidence of SDI's good-faith belief of the asserted patent's invalidity and of SDI's reliance on the opinion of counsel. We therefore reverse that portion of the District Court's summary judgment and remand for further proceedings.

Accordingly, the summary judgment of noninfringement of the District Court is

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

### COSTS

No costs.